Stephenson, J.
 

 The city of Akron claims that the Public Utilities Commission has jurisdiction to grant this change in rate by virtue of Section 614-32, General Code, which reads as follows:
 

 “The commission shall have power, when deemed by it necessary to prevent injury to the business or interests of the public or any public utility of this state in case of any emergency to be judged by the commission, to temporarily alter, amend, or with the consent of the public utility concerned suspend any existing rates, schedules or order relating to or affecting any public utility or part of any public utility in this state. Such rates so made by the commission shall apply to one or more of the public utilities in this state or to any portion thereof as may be directed by the commission, and shall take effect at such time and remain in force for such length of time as may be prescribed by the commission.”
 

 This is a direct grant of power and there is little question concerning the clarity and emphasis of this section. It will be conceded that the Public Utilities Commission ordinarily has the power, on proper hearing, to increase or reduce a rate in case of emergency; but there is one hurdle that is hard to overcome in this particular case. The city made its rate by ordinance, and the gas company accepted the contract, in writing. By its contract, made by way of proffer, the city fixed a certain rate at which the gas company, if it saw fit, would be permitted to furnish natural gas to the city for a specified time. By its acceptance, the gas company agreed, during the term of the contract, as set out by the ordinance, to furnish its product to the city at the rate set out in the ordinance.
 

 The rights of the parties became vested when the
 
 *337
 
 gas company accepted the proffer of the city, and we know of no power delegated, or that conld be delegated, to any individual or state agency to in any wise interfere with these vested rights. If the state Legislature undertook to do so, it would be walking squarely in the face of the Constitution of the state.
 

 We are not unmindful that the state and its municipalities are given a wide latitude in the exercise of their police powers; but the state cannot extend its police power or that of its municipalities so as to interfere with vested contract rights. An interest in a contract is private property, and it has the same sacrosanct attributes as other property.
 

 Section 614-47, General Code, is of no help in this case as we view it. It is simply a reiteration of the spirit of the Constitution. It is sought herein to make a distinction between a contract right and a regulatory right. There is no question but that there is a distinction. A regulatory right ordinarily prescribes an inhibition. If a public utility agrees to furnish its product to the municipality at the regulatory rate, and there is a meeting of the minds and an acceptance, then the regulatory rate becomes a contract rate and such rate is not subject to review by the Public Utilities Commission.
 

 Notwithstanding the fact that Section 614-44, General Code, was involved in the case of
 
 Link
 
 v.
 
 Public Utilities Commission,
 
 102 Ohio St., 336, 131 N. E., 796, the same question was therein involved as here. The city of Akron had a constitutional and statutory right to fix a rate for the gas company, which it did. The gas company accepted the rate and thereby made a contract; and this rate, during the term of that contract, cannot be altered in any wise by the Public Utilities Commission. An abundance of authorities could be cited to sustain this position, but the court does not deem it necessary.
 

 
 *338
 
 The Public Utilities Commission had no jurisdiction to entertain the application of the city herein, and. it committed no error in refusing to entertain such application. The order of the Public Utilities Commission is hereby affirmed.
 

 Order affirmed.
 

 Weygandt, C. J., Day, Allen, Jones and Matthias, JJ., concur.
 

 Kinkade, J., not participating.